STATE *ex rel* JOHN H. PURSER *v.* ROBERT B. SIMPSON *et. al.*

A guardian, who held a well secured ante-war note, and collected the same in Confederate currency in September and October, 1863, when there was no need for its collection, and immediately thereafter invested the same in 7-30 Confederate bonds, was guilty of *laches*, and is liable to his ward for the full amount of the principal and interest of said note.

After the 4th of July, 1863, no person acting in a fiduciary capacity, ought to have collected well secured ante-war debts, and invested in Confederate securities.

*Shuford* v. *Ramsour*, 63 N. C. 622, cited and approved.

This was a civil action tried before *Buxton, J.,* at Spring Term, 1871, of UNION Superior Court.

The relator of the plaintiff brought suit on the bond of the defendant, Simpson, who had been his guardian. After issues had been joined upon the pleadings filed, there was an order made directing the Clerk of Union Superior Court, to take the

account of the defendant, Simpson, as guardian of the relator of the plaintiff, and report to the next Term of the Superior Court.

The defendants in their answer admitted that the guardian, Simpson, received for his ward $383 in October, 1858, lent out the same directly after its receipt, and took a bond payable to him as guardian of the relator with security—that in September and October, 1863, he collected said note in Confederate securities, and immediately thereafter invested $300 of said currency in Confederate 7-30 bonds.

The Clerk in his account allowed the defendants the amount invested in 7-30 Confederate bonds, which is known in said account as voucher No. 13, to which the relator of the plaintiff excepted.

" Because in allowing credit for voucher No. 13, the referee did so without any sufficient proof. No certificate for said money being shown, nor any offer made for its absence, and especially because the allowance thereof is irreconcilable with the sworn answer of defendants, and because his answer shows that the money was received upon an *ante-war debt*, which was well secured, and at a time when he ought not to have done so."

His Honor sustained the exception, because there was no reason shown why the guardian collected a good ante-war debt and "immediately thereafter" invested it in Confederate securities.

From which ruling the defendants appealed.

*Phillips & Merrimon*, for plaintiff.
*Ashe*, for defendant.

BOYDEN, J. The defendant, the guardian, having an ante-war debt, well secured, payable to himself as guardian of his ward, and having no need of the money, his ward being only some sixteen years old, collected in September and October 1863, this ante-war debt, in Confederate treasury notes, and

immediately thereafter invested the same in 7-30 Confederate bonds, the treasury notes and bonds being at the time of the receipt and investment, at a discount.

Why collect this ante-war debt, well secured, when he had no need of the money ? Why invest in this worthless Confederate paper ?

It will be remembered, that this was after the surrender of Vicksburg and the battle of Gettysburg, and after men of ordinary prudence had ceased to collect their well secured ante-war debts in Confederate currency.

The law will hold responsible all guardians who under such circumstances, unnecessarily collect and invest their wards' money. *Shuford* vs. *Ramsour*, 63 N. C. 622. There is 'no error.

PER CURIAM. Judgment affirmed.